# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

LeDon Spurling,
            Petitioner,

            vs.                                    Case No. 1:07cv748
                                                   (Beckwith, C.J.; Black, M.J.)

Ohio Adult Parole Authority,[1]
            Respondent.

## REPORT AND RECOMMENDATION

        Petitioner, who was recently released from an Ohio prison on "post release control," has filed a *pro se* petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.  This matter is before the Court on the petition as supplemented (Docs. 1, 5), respondent's "Answer/Return Of Writ" (Doc. 6), and petitioner's reply to the return of writ (Doc. 9).[2]  Also pending before the Court for ruling is petitioner's motion for summary judgment, which was filed on December 28, 2007.  (Doc. 8).

---

        [1]  In the petition, petitioner properly named as respondent the Warden of Dayton Correctional Institution (DCI), because petitioner was incarcerated at DCI then.  However, on January 5, 2008, petitioner was released from prison to serve the "post release control" portion of his state sentence under the supervision of the Ohio Adult Parole Authority (OAPA).  (*See* Doc. 10).  Because it appears the OAPA now has custody of petitioner, the caption of the case is hereby changed to reflect the proper party respondent.  *See* Rule 2, Rules Governing Section 2254 Cases in the United States District Courts, 28 U.S.C. foll. § 2254.

        [2]  In assessing the merits of the petition in light of the return of writ and petitioner's reply memorandum, the undersigned also has considered the arguments asserted in a pleading filed by petitioner on January 7, 2008 entitled "Motion For Reference To A Magistrate" (Doc. 11), which has been ruled on by separate Order issued this date.

## Background

On May 20, 2005, the Hamilton County, Ohio grand jury issued an indictment charging petitioner with one count of trafficking in cocaine in violation of Ohio Rev. Code § 2925.03(A)(2) (Count One) and one count of possession of cocaine in violation of Ohio Rev. Code § 2925.11(A) (Count Two). (Doc. 6, Ex. 1).

On November 9, 2005, petitioner entered a guilty plea to the first count, which was amended from a third-degree-felony trafficking charge to a third-degree-felony possession count; and in exchange for petitioner's plea, the State dismissed the fourth-degree-felony possession charge set forth in Count Two of the indictment, and the parties jointly agreed to a prison sentence of two (2) years.[3] (*See id.,* Exs. 2-4).

Prior to sentencing, on December 7, 2005, petitioner's counsel filed a motion pursuant to Ohio R. Crim. P. 32.1 for withdrawal of petitioner's guilty plea. (*Id.,* Ex. 5). A hearing was held on December 13, 2005, wherein the prosecutor voiced his objection to the motion. (*See id.,* Ex. 6, Tr. 3-4). The following colloquy ensued:

> DEFENSE COUNSEL: . . . Mr. Spurling indicated to me at the time he appeared in my office, and also in the hallway today, that he, while the evidence may be strong as to his guilt on the possession offense, does not feel it is a good case for trafficking. He feels he was overcharged and would like 12 people on a panel of jury to decide his guilt or innocence mainly for the purposes of that charge, although he wants to contest the possession charge as well.

> Simply stated, Judge, he wants a jury trial.

> ****

---

[3] According to the written plea entry executed by petitioner, as well as defense counsel and the prosecuting attorney, the parties agreed that a four (4) year sentence would be imposed if petitioner failed to appear for sentencing or incurred more criminal charges before sentencing. (*See* Doc. 6, Ex. 2).

2

PROSECUTOR:  He changed his mind.  That's not good enough, Judge.

THE COURT:  That's not good enough.  I mean, you can't just ignore all the things he answered in the positive in regard to the waiver of his rights and that he thought it was in his best interest to enter the plea bargain.  And now he just says, I think I might want a jury trial.  That's insufficient.  You have to have some reason as to why. . . .

THE DEFENDANT:  I understood my trafficking case was dismissed at that point in time, and I was willing to plead to the possession, and I took the plea on that day.  I come to find out it was amended.  It was – I totally understood it as a dismissal and they gave me an additional six months to the possession charge, which is the reason why I withdrew my plea because they caught me red-handed with the crack cocaine.

THE COURT:  You were convicted of possession of cocaine, so I don't understand.  You were admitting you possessed and you were convicted of possession.

THE DEFENDANT:  I had it in my possession.

THE COURT:  Wait.  Man, what are you talking about then? . . .  The issue is you were convicted of possession and you admit you possessed, so what are you talking about?  What do you want, to try it?  If that's what you said you did and that's what you pled to, what is – there is nothing in here about trafficking. . . .  It's possession of cocaine.  I told you it was possession of cocaine.  It was amended to possession.

DEFENSE COUNSEL:  Your Honor, the point he's trying to make to you is that he was under the impression that the trafficking case had been dismissed when – . . . in fact, it was amended.

THE COURT:  Excuse me.  If it's amended and it's amended to the charge he says he did, what is the prejudice in that?  I don't understand. . . .  They could never do away with the fact that they

3

> originally charged him with trafficking. But his record will be that he
> was convicted of possession. I don't understand at all. I mean, the
> man admits he was caught red-handed on a possession offense, that's
> what he got convicted of. And now he wants to withdraw his plea so
> that he can be convicted by a jury. What would that – it would be the
> trafficking back again. Overruled.

(*Id.,* Tr. 4-7). An Entry also was filed on December 13, 2005 reflecting that
petitioner's motion to withdraw his guilty plea was overruled. (*Id.,* Ex. 7).

Apparently with the assistance of new retained counsel, petitioner filed a
renewed motion to withdraw his guilty plea. On January 6, 2006, the scheduled
sentencing date, the court heard arguments on the motion at the outset of the
hearing after petitioner's prior counsel was permitted to withdraw from the case
with petitioner's express approval and new counsel took over as petitioner's
"counsel of record." (*See id.,* Ex. 8, Tr. 13-18).

Petitioner's new counsel essentially argued at this hearing that petitioner did
not understand the implications of the plea agreement that he signed, because
although he knew he was going to plead guilty to a "drug abuse charge," he did not
realize that he would be pleading to a felony offense of the third degree based on
the amendment of Count One's trafficking charge to a possession count rather than
the fourth-degree-felony possession offense charged in Count Two. (*See id.,* Tr.
20-22).

The trial court overruled the motion (*see id.,* Ex. 9), reasoning as follows on
the record at the hearing:

> First of all, [the motion is] redundant. There is no way under the rules
> that you can file a second motion to withdraw your plea and just keep
> coming back changing your reasons.
>
> I will also add that if you look, review the record, it was discussed
> many times with him. His whole complaint was that he wanted to be
> sure that he was convicted of a possession charge and not a trafficking
> charge. And that's what happened. That's exactly what he agreed to
> do. . . . [T]hat's what he understood he wanted done, and that's what
> actually happened. . . .

4

(*Id.,* Ex. 8, Tr. 22).

The court then proceeded to sentencing, where petitioner again argued in mitigation that he misunderstood he was pleading to a third-degree-felony possession charge as opposed to a fourth degree felony which carried a lesser sentence. (*See id.,* Tr. 29-31). In response, the court stated: "I really don't have a right to mitigate an agreed sentence, sir. You agreed to it, they agreed to it, and it's not up to me. I have to enforce any agreement between the prosecutor and the defense." (*Id.,* Tr. 31). Accordingly, on January 6, 2006, the court dismissed Count Two of the indictment and sentenced petitioner to a two-year prison term on Count One's amended possession charge in accordance with the terms of the parties' plea agreement. (*Id.,* Tr. 33 & Exs. 10-11).

With the assistance of another new attorney, petitioner timely appealed to the Ohio Court of Appeals, First Appellate District. (*Id.,* Ex. 12). Petitioner's appellate counsel filed a brief raising three assignments of error:

> 1. The trial court erred to the prejudice of the defendant-appellant in that it overruled his motion to withdraw his guilty plea.
>
> 2. Defendant-appellant's sentence was supported by findings of fact under Ohio's unconstitutional sentencing scheme, and thus he must be remanded and appropriately sentenced.
>
> 3. Defendant-appellant's other assignments of error [which were attached as an appendix to counsel's appellate brief], while not supported by the record, are appropriate for the court's independent review [under *Anders v. California,* 386 U.S. 738 (1967)].

(*Id.,* Ex. 13). Petitioner also filed a *pro se* supplemental brief adding two more claims for appellate review:

> 4. Appellant was denied due process and equal protection as guaranteed by the Fourteenth Amendment to the United States Constitution when the trial court erred to the prejudice of appellant by amending the indictment.
>
> 5. Ap[p]ellant was denied the effective assistance of counsel as

5

guaranteed by the Sixth and Fourteenth Amendments to the United
States Constitution, and Article I, Section 10 of the Ohio Constitution.

(*Id.,* Ex. 14).

On October 27, 2006, the Ohio Court of Appeals issued a Decision
sustaining petitioner's first assignment of error, and finding the remaining
assignments of error were moot, because "the trial court did not afford the
defendant the due process required–it denied the defendant's Crim.R. 32.1 motion
to withdraw a guilty plea without a hearing." (*See id.,* Ex. 16).

The State filed a motion for reconsideration, arguing that contrary to the
state appellate court's finding, a hearing in fact was held on December 13, 2005 on
petitioner's initial motion to withdraw his guilty plea which was not made part of
the record on appeal. (*Id.,* Ex. 17). On November 29, 2006, the Ohio Court of
Appeals granted the State's motion for reconsideration and ordered
supplementation of the record as well as the filing of supplemental briefs. (*Id.,* Ex.
18).

Petitioner's appellate counsel filed an amended brief raising essentially the
same assignments of error that he had previously presented on direct appeal. (*See
id.,* Ex. 19). Petitioner also filed amended *pro se* supplemental briefs, in which he
claimed that (1) the trial court erred in amending Count One of the indictment to
reflect a third-degree-felony drug possession offense; and (2) his trial counsel was
ineffective in failing to object to the indictment's amendment, failing to object to
the State's representation that petitioner possessed more crack cocaine than he
actually had, and failing to pursue a suppression motion. (*Id.,* Exs. 21-22).

On March 2, 2007, after reviewing the supplemented record and
supplemental briefs on reconsideration, the Ohio Court of Appeals overruled the
assignments of the error asserted by both petitioner and his appellate counsel and
affirmed the trial court's judgment of conviction and sentence. (*Id.,* Ex. 23).[4]

---

[4] Months later, on December 10, 2007, petitioner filed a motion for delayed reopening of
the appeal under Ohio R. App. P. 26(B) based on allegations of ineffective assistance by his
appellate counsel. (Doc. 6, Ex. 27). Upon review of the court's updated docket records, which
may be accessed through the internet, it appears the state appellate court recently denied
petitioner's application for delayed reopening on January 25, 2008.

Proceeding *pro se,* petitioner timely appealed to the Supreme Court of Ohio. (*Id.,* Ex. 24).  Petitioner asserted two propositions of law in his memorandum in support of jurisdiction.  He challenged (1) the trial court's amendment of the indictment; and (2) his trial attorney's effectiveness to the extent counsel "allowed the trial court to impermissibly amend the indictment" and allowed petitioner "to plead guilty to possession of cocaine, a felony of the third degree, for an amount [1.35 grams of crack cocaine] that was a felony of the fourth degree, as originally charged in count two . . . of the indictment."  (*See id.,* Ex. 25).

On July 25, 2007, the Supreme Court of Ohio denied petitioner leave to appeal and summarily dismissed the appeal "as not involving any substantial constitutional question."  (*Id.,* Ex. 26).[5]

Petitioner filed the instant action in September 2007.  He alleges seven grounds for federal habeas relief:

**Ground One:**  Petitioner was denied the due process and equal protection as guaranteed by the Fourteenth Amendment to the United States Constitution when the trial court erred to the prejudice of petitioner by amending the indictment.

**Ground Two:**  Petitioner was denied the effective assistance of counsel as guaranteed by the Sixth Amendment to the United States Constitution, and Article I[,] Section 10 of the Ohio Constitution.

**Ground Three:**  The trial court erred by failing to make factual

_____

[5]  It appears from the record that petitioner also has sought to overturn his conviction and sentence by resorting to a variety of other possible remedies available at the trial court level, including numerous post-conviction motions to withdraw his guilty plea, numerous motions alleging ineffective assistance of trial counsel, motions for acquittal under Ohio R. Crim. P. 29, a motion for sentence reduction or mitigation, motions for new trial and to proceed to trial, and a petition to vacate or set aside sentence.  (*See id.,* Ex. 50A).  The court did not rule on many of these motions, but did enter orders denying the first post-conviction motion to withdraw guilty plea that was filed by petitioner on April 3, 2006, denying petitioner's motion requesting a new trial, dismissing the petition to vacate or set aside sentence as untimely and successive, and most recently on January 20, 2008, dismissing one or more of petitioner's many pending motions. (*See id.* & Exs. 28, 30, 41, 42, 43, 45).  It does not appear that petitioner has appealed any of these rulings to the state appellate courts.

findings concerning the drug quantity to be attributed to petitioner.

**Ground Four:**  The trial court erred to the prejudice of the petitioner by convicting him of a third degree possession of cocaine as this finding was not found by a jury nor admitted by the defendant-petitioner.

**Ground Five:**  Petitioner was denied the due process and equal protection as guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution when the trial court imposed a sentence exceeding the maximum term authorized for the offense charged to petitioner.

**Ground Six:**  The conviction and sentence is void pursuant to the Fifth, Sixth, and Fourteeenth Amendments to the United States Constitution [stemming from the improper amendment to the indictment].

**Ground Seven:**  Petitioner's sentence was supported by felony sentencing findings under Ohio's unconstitutional sentencing scheme and thus his sentence should be overturned.

(Doc. 1, pp. 5-9).

In the return of writ, respondent concedes that the petition was timely filed. (Doc. 6, Brief, pp. 12-14).  Respondent argues that petitioner has waived the claims alleged in Grounds Three through Seven of the petition due to his procedural defaults in the state courts.  (*Id.,* pp. 14-18).  Respondent further contends that the claims alleged in Grounds One and Two of the petition, as well as any additional claims challenging the validity of petitioner's guilty plea and sentence, are devoid of merit.  (*Id.,* pp. 20-26).

## OPINION

### A.  Petitioner Has Waived The Claims Alleged In Grounds Three Through Seven Of The Petition Due To His Procedural Defaults In The State Courts

Respondent has argued in the return of writ that petitioner has waived the

8

claims alleged in Grounds Three through Seven of the petition because of his procedural defaults in the state courts. (Doc. 6, Brief, pp. 14-18). In the petition, petitioner concedes that he failed to present the claims alleged in Grounds Three through Six of the petition to the state courts for consideration. (*See* Doc. 1, p. 10). He states that the claim alleged in Ground Seven was asserted by his appellate counsel as an assignment of error on direct appeal to the Ohio Court of Appeals. (*See id.*). However, petitioner did not reassert the claim as a proposition of law when he sought leave to appeal further to the Supreme Court of Ohio. (*See* Doc. 6, Ex. 25).

In recognition of the equal obligation of the state courts to protect the constitutional rights of criminal defendants, and in order to prevent needless friction between the state and federal courts, a state defendant with federal constitutional claims must fairly present those claims to the state courts for consideration before raising them in a federal habeas corpus action. *See* 28 U.S.C. § 2254(b)(1), (c)*; see also Anderson v. Harless,* 459 U.S. 4, 6 (1982) (per curiam); *Picard v. Connor,* 404 U.S. 270, 275-76 (1971). A constitutional claim for relief must be presented to the state's highest court in order to satisfy the fair presentation requirement. *See O'Sullivan v. Boerckel,* 526 U.S. 838, 845, 848 (1999); *Hafley v. Sowders,* 902 F.2d 480, 483 (6th Cir. 1990); *Leroy v. Marshall,* 757 F.2d 94, 97, 99-100 (6th Cir.), *cert. denied,* 474 U.S. 831 (1985).

If petitioner fails to fairly present his claims through the requisite levels of state appellate review to the state's highest court or commits some other procedural default relied on to preclude review of the merits of the claims by the state's highest court, and if no avenue of relief remains open or if it would otherwise be futile for petitioner to continue to pursue his claims in the state courts, his claims for habeas corpus relief are subject to dismissal with prejudice on the ground that they are waived. *See O'Sullivan,* 526 U.S. at 847-848; *Harris v. Reed,* 489 U.S. 255, 260-62 (1989); *McBee v. Grant,* 763 F.2d 811, 813 (6th Cir. 1985); *see also Weaver v. Foltz,* 888 F.2d 1097, 1099 (6th Cir. 1989).

If, because of a procedural default, petitioner has not had his claims considered by the state's highest court and he can no longer present his claims to the state courts, he has waived the claims for purposes of federal habeas corpus review unless he can demonstrate cause for the procedural default and actual prejudice resulting from the alleged constitutional errors, or that failure to consider the claims will result in a "fundamental miscarriage of justice." *Coleman v.*

9

*Thompson,* 501 U.S. 722, 750 (1991); *see also Murray v. Carrier,* 477 U.S. 478, 485 (1986); *Engle v. Isaac,* 456 U.S. 107, 129 (1982); *Wainwright v. Sykes,* 433 U.S. 72, 87 (1977).

In this case, as respondent has pointed out (*see* Doc. 6, Brief, pp. 14-18) and petitioner has conceded (*see* Doc. 1, p. 10), petitioner procedurally defaulted the claims alleged in Grounds Three through Seven of the petition.  Specifically, petitioner committed a procedural default with respect to claims alleged in Grounds Three through Six of the petition, because he never raised them to the state courts for consideration in the direct review proceedings;[6] moreover, although petitioner's appellate counsel asserted the claim alleged in Ground Seven of the petition as an assignment of error on direct appeal to the Ohio Court of Appeals, he did not pursue the issue on further discretionary appeal to the Supreme Court of Ohio.  (*See* Doc. 6, Exs. 13, 25); *see also O'Sullivan,* 526 U.S. at 845, 848; *Leroy,* 757 F.2d at 97, 99-100.  Because petitioner thus failed to provide the state's highest court with the opportunity to correct the alleged errors, he has waived such claims absent a showing of cause for his defaults and actual prejudice as a result of the alleged errors, or that failure to consider the claims will result in a "fundamental miscarriage of justice."  *See Coleman,* 501 U.S. at 750; *see also Murray,* 477 U.S. at 485; *Isaac,* 456 U.S. at 129; *Sykes,* 433 U.S. at 87.

Petitioner has not demonstrated "cause" for his procedural defaults in the state courts.  First, he has not provided any justification for his failure to raise the claim alleged in Ground Seven to the Supreme Court of Ohio when seeking review of the Ohio Court of Appeals' direct appeal decision rejecting such claim on the merits.  Petitioner only states in the petition that he did not assert the claims alleged in Grounds Three through Six on further appeal to the state supreme court, because he "was under the impression that he could not raise additional claims [not presented to the court of appeals] or the Higher Court would throw them out."

---

[6]  To the extent petitioner has sought to raise these claims in his numerous post-conviction petitions and motions filed with the trial court after the final Judgment Entry issued on January 6, 2006, he committed other procedural defaults by failing to raise the record-based issues on direct appeal and failing to appeal (1) the court's April 5, 2007 entry denying his third motion to withdraw his guilty plea, which was the first of many such motions filed post-sentencing (*see* Doc. 6, Ex. 30); (2) the court's August 2, 2007 entry denying one of his many motions for new trial (*see id.,* Ex. 42); and (3) the court's August 16, 2007 entry dismissing his petition for post-conviction relief as "untimely and successive" (*see id.,* Ex. 45).

(Doc. 1, p. 10). Petitioner thereby suggests as "cause" for his procedural default of the remaining claims alleged in Grounds Three through Six of the petition that his appellate counsel was ineffective in failing to present those claims when he had the opportunity to do so on his first appeal as of right to the Ohio Court of Appeals.[7]

Ineffective assistance of appellate counsel may constitute "cause" for a procedural default, *see Murray,* 477 U.S. at 488, as long as the ineffective assistance of appellate counsel claim is not itself procedurally defaulted. *See Edwards v. Carpenter,* 529 U.S. 446, 452 (2000); *Richey v. Mitchell,* 395 F.3d 660, 679 (6th Cir.), *rev'd on other grounds,* 546 U.S. 74 (2005) (per curiam).

Here, petitioner filed a delayed application to reopen his appeal with the Ohio Court of Appeals on December 10, 2007, months after that court issued its final decision on March 24, 2007 affirming the trial court's judgment of conviction and sentence on direct appeal; in the reopening application, petitioner contended that his appellate counsel was ineffective in part because he failed to present the claims alleged in Grounds Three through Six to the Ohio Court of Appeals on direct appeal. (*See* Doc. 6, Ex. 27). However, on January 25, 2008, the Ohio Court of Appeals denied petitioner's delayed reopening application because petitioner failed to meet the 90-day deadline for filing a timely reopening application and failed to establish "good cause" for his delay in filing.[8]

The state appellate court's clear and express reliance on petitioner's procedural default in failing to file a timely reopening application absent a showing of good cause constitutes an adequate and independent state ground for the appellate court's decision, which precludes this Court from addressing the merits

---

[7] It is noted that this argument is limited to errors committed by counsel in petitioner's first appeal as of right, because petitioner is unable to prevail on any claim that the constitutional right to effective assistance of counsel extended beyond his direct appeal before the Ohio Court of Appeals to the subsequent state supreme court discretionary appeal. *See Coleman v. Thompson,* 501 U.S. 722, 755-57 (1991) (relying on *Ross v. Moffitt,* 417 U.S. 600, 616 (1974), and *Pennsylvania v. Finley,* 481 U.S. 551, 556 (1987)); *cf. Wainwright v. Torna*, 455 U.S. 586, 587-88 & n.4 (1982) (per curiam).

[8] Respondent's counsel faxed a copy of the Ohio Court of Appeals' January 25, 2008 entry to the Court pursuant to a court employee's request after an internet review of the state court's updated docket records revealed that the Ohio Court of Appeals had denied petitioner's reopening application.

11

of petitioner's ineffective assistance of appellate counsel claims.  *See, e.g., Harris v. Reed,* 489 U.S. 255, 260-62 (1989); *Coleman v. Thompson,* 501 U.S. 722, 750 (1991); *see also Murray v. Carrier,* 477 U.S. 478, 485 (1986); *Engle v. Isaac,* 456 U.S. 107, 129 (1982); *Wainwright v. Sykes,* 433 U.S. 72, 86-87 (1977);  *McBee v. Grant*, 763 F.2d 811, 813 (6th Cir. 1985).  Accordingly, the undersigned concludes that petitioner is unable to establish "cause" for his procedural default of the claims alleged in Grounds Three through Six of the petition based on any argument, which itself is procedurally-defaulted, that his appellate counsel was ineffective in failing to raise such claims on direct appeal.  *See Edwards,* 529 U.S. at 452 (2000); *Richey,* 395 F.3d at 679.[9]

In any event, even assuming, *arguendo,* petitioner's ineffective assistance of appellate counsel claims were not procedurally defaulted for the purpose of establishing "cause," his allegations of ineffectiveness lack merit.

Appellate counsel does not have a constitutional duty "to raise every 'colorable' claim suggested by a client."  *Jones v. Barnes,* 463 U.S. 745, 754 (1983).  In *Barnes,* the Supreme Court stated:

> There can hardly be any question about the importance of having the appellate advocate examine the record with a view to selecting the most promising issues for review. . . .  A brief that raises every colorable issue runs the risk of burying good arguments–those that, in the words of the great advocate John W. Davis, "go for the jugular,"... –in a verbal mound made up of strong and weak contentions.

*Id.* at 752-53.

In another case, the Supreme Court stated further that "[n]otwithstanding *Barnes,* it is still possible to bring a *Strickland* claim based on counsel's failure to raise a particular claim, but it is difficult to demonstrate that counsel was incompetent."  *Smith v. Robbins,* 528 U.S. 259, 288 (2000).  Quoting from a Seventh Circuit decision, *Gray v. Greer,* 800 F.2d 644, 646 (7th Cir. 1986), the

---

[9]  In any event, petitioner, whose *pro se* claims were presented to and addressed by the Ohio Court of Appeals on direct appeal, has not explained why he himself failed to bring the procedurally-defaulted claims alleged in Grounds Three through Six to the state appellate court's attention.

Court indicated that "[g]enerally, only when ignored issues are clearly stronger than those presented, will the presumption of effective assistance be overcome." *Id.*

In this case, counsel presented two assignments of error to the Ohio Court of Appeals on direct appeal, which he reasonably believed had the strongest chance of success; in addition, he asserted a third assignment of error on petitioner's behalf in order to provide petitioner with an opportunity to be heard on numerous other attached *pro se* claims which petitioner alone considered were deserving of review. (*See* Doc. 6, Exs. 13, 19).  Counsel's focus on the strongest arguments for finding reversible trial error constituted effective appellate advocacy, and indeed, counsel went beyond the call of duty to the extent he added a third claim raising issues that only petitioner believed amounted to reversible error.  In any event, the claims alleged in Grounds Three through Six of the petition had little likelihood of success in light of petitioner's knowing and intelligent guilty plea to the amended third-degree-felony possession charge with an agreed-to two (2) year sentence. Petitioner's appellate counsel, therefore, was not ineffective in failing to include them as additional assignments of error on direct appeal.  *Cf. Strickland v. Washington,* 466 U.S. 668, 687 (1984).

Finally, petitioner has not demonstrated that a "fundamental miscarriage of justice" will occur, or in other words, that the alleged constitutional violations "probably resulted in the conviction of one who is actually innocent" of the crimes charged, if Grounds Three through Seven are not considered on the merits herein. *See Murray,* 477 U.S. at 495-96; *see also Schlup v. Delo,* 513 U.S. 298, 327 (1995); *cf. Souter v. Jones,* 395 F.3d 577, 597-602 (6th Cir. 2005).

Petitioner suggests that he is actually innocent of the possession charge for which he was convicted, because he did not possess the quantity of cocaine required to establish guilt for a felony of the third degree.  However, to show actual innocence in the guilty plea context, petitioner must demonstrate "not only that he is innocent of the charge he seeks to attack, [but] also . . . that he is actually innocent of the other charges the government chose to forego during the plea bargaining process."  *Howard v. U.S. Dep't of Justice,* 3 Fed.Appx. 269, 270 (6th Cir. Jan. 26, 2001) (not published in Federal Reporter); *see also Bousley v. United States,* 523 U.S. 614, 624 (1998); *Hampton v. United States,* 191 F.3d 695, 703 (6th Cir. 1999).  No such showing has been made in this case.

It appears from the record that during the plea negotiations, the State agreed not only to forego prosecution of the lesser-degree possession charge set forth in Count Two of the indictment, but also of the third-degree-felony trafficking charge originally set forth in Count One by amending it to reflect a possession offense of the same degree. When petitioner entered his guilty plea on November 9, 2005 to the amended charge of possession, the prosecutor expressly stated at the hearing that petitioner was entering a plea of guilt for possession of crack cocaine "in an amount that exceeded five grams," and went on to state the following facts giving rise to the original trafficking count:

> What happened was he was arrested on that date within a thousand feet of Washington Park Elementary School. He was engaged in behavior which indicated to the officers he was drug trafficking. They found drugs and a scale on his person.

(Doc. 6, Ex. 3, Tr. 9). Petitioner has neither cited nor presented any evidence to show he is actually innocent on that original charge.

Accordingly, in sum, he undersigned concludes that the claims alleged in Grounds Three through Seven of the petition are barred from review in this federal habeas proceeding due to petitioner's procedural defaults, which foreclosed any opportunity for the Supreme Court of Ohio to correct the alleged errors. Petitioner has neither shown cause for his procedural defaults in the state courts nor demonstrated that a fundamental miscarriage of justice will occur if the defaulted claims are not considered on the merits herein. Therefore, the claims alleged in Grounds Three through Seven of the petition should be dismissed with prejudice as waived.

## B. Petitioner Is Not Entitled To Relief Based On His Claim Alleged In Ground One Challenging The Trial Court's Amendment Of The Indictment And Thus The Validity Of Petitioner's Guilty Plea To The Amended Count

In Ground One of the petition, petitioner alleges that the trial court violated his constitutional rights to due process and equal protection when it allowed the State to amend the indictment at the plea hearing held on November 9, 2005 to reflect that the third-degree-felony trafficking offense originally charged in Count One was changed to a third-degree-felony possession offense. (Doc. 1, p. 5).

14

The Ohio Court of Appeals was the only state court to issue a reasoned decision addressing the merits of this claim, which was raised by petitioner in his *pro se* supplemental brief on direct appeal. The court rejected the claim, reasoning in relevant part as follows:

> Crim.R. 7(D) provides that "[t]he court may at any time before, during, or after trial amend the indictment *** in respect to any defect, imperfection or omission in form or substance, or of any variance with the evidence, provided no change is made in the name or identity of the crime charged."

> Here, Spurling entered into a plea agreement where he would plead guilty to the new count one–possession of cocaine–in exchange for an agreed sentence of two years. He waived his ability to challenge the amended indictment when he entered into the plea agreement for the agreed sentence of two years. A defendant can not invite error. And Spurling is already getting the benefit of the bargain of a two-year prison term instead of the possible six and a half years that could have resulted from a conviction on the two original charges.

(Doc. 6, Ex. 23, pp. 6-7).

15

As an initial matter, petitioner's allegations of error, which involve the manner by which the indictment was amended at the plea-taking proceeding, do not appear to give rise to a federal constitutional claim.  Indeed, it is well settled that there is not even a federal constitutional right to an indictment in state criminal proceedings.  *Hurtado v. California,* 110 U.S. 516, 537-38 (1884); *see also Branzburg v. Hayes,* 408 U.S. 665, 688 n.25 (1972); *Koontz v. Glossa,* 731 F.2d 365, 369 (6th Cir. 1984) ("The law is well settled that the federal guarantee of a grand jury indictment has not been applied to the states. . . .  It is also well settled in this Circuit that the Constitution does not require any particular state indictment rule."); *Watson v. Jago,* 558 F.2d 330, 337 (6th Cir. 1977).  As long as "sufficient notice of the charges is given in some . . . manner," the Fourteenth Amendment's Due Process Clause is satisfied.  *Koontz,* 731 F.2d at 369; *Watson,* 558 F.2d at 338.

Here, petitioner does not dispute that the indictment, which was the instrument used to charge him in this case, provided sufficient notice of the original charges against him of third-degree-felony drug trafficking and fourth-degree-felony possession of cocaine.  To the extent he claims that the amendment to the indictment at the plea hearing on November 9, 2005, failed to provide adequate notice of the amended charge to which he was entering a guilty plea, the record belies this contention.  Indeed, to the contrary, it appears upon review of the entire record that the parties agreed to the indictment's amendment as a means to circumvent an impasse reached in the negotiations process stemming from petitioner's unwillingness to enter a guilty plea to a trafficking offense and the State's refusal to enter an agreement to a possession offense, as charged in Count

Two, carrying a prison sentence of less than two (2) years.[10]

In the written plea agreement executed by petitioner and filed on November 9, 2005, petitioner expressly stated that he understood he was entering a guilty plea to the "amended" Count One, charging "possession of cocaine" of "F3" degree, which carried a potential sentence of "1, 2, 3, 4, 5 yrs." (Doc. 6, Ex. 2).  In addition, at the plea hearing on November 9, 2005, the proceeding began with the amendment of Count One, where petitioner stated in response to the trial judge's query that he understood he would "have to receive a two-year term."  (*Id.,* Ex. 3, Tr. 3).  The colloquy continued in relevant part as follows:

> THE COURT: You have agreed to plead guilty in return for the plea bargain.  There is a possible one to five year sentence . . . that could be imposed. . . .  Do you understand these other penalties?
>
> THE DEFENDANT: Yes, I do.
>
> THE COURT: When you plead guilty, it is a complete admission of

---

[10]

The prosecutor made it clear at the November 9, 2005 plea hearing that he would not agree to a sentence of less than two (2) years; indeed, the prosecutor stated that his offer would have been for a three (3) year sentence if not for his "good working relationship" with petitioner's trial counsel. (*See* Doc. 6, Ex. 3, Tr. 8).  With respect to petitioner's unwillingness to plead guilty to a trafficking charge, petitioner testified at the December 13, 2005 hearing on his motion to withdraw his guilty plea that he was willing to plead guilty to possession as opposed to trafficking, which he understood was being dismissed, "because they caught me red-handed with the crack cocaine."  (*Id.*, Ex. 6, Tr. 5).  In addition, at petitioner's sentencing hearing on January 6, 2006, the trial court pointed out in rejecting petitioner's renewed motion to withdraw the guilty plea, that petitioner's "whole complaint was that he wanted to be sure that he was convicted of a possession charge and not a trafficking charge."  (*Id.,* Ex. 8, Tr. 22).  Although petitioner also claimed at those hearings that he did not understand the trafficking charge was not "dismissed" but rather amended to a third-degree-felony possession count, the record of the November 9, 2005 plea hearing, discussed *infra* pp. 16-18, belies that contention.  Indeed, petitioner himself averred in *pro se* pleadings submitted on direct appeal that before entering the courtroom on November 9, 2005, his trial counsel spoke with him and his family in the hallway, "stating 'we're going to *amend* the trafficking charge, and dismiss[] the fourth degree possession for a third degree possession, take the two years.'" (*Id.*, Ex. 13, attachment) (emphasis added).  Petitioner stated that he then asked his attorney why he should "do more time for a substance that carries a total max up to 18 months," and that counsel responded: "[T]he prosecutor wants you to do more time." (*Id.*).

your guilt and a waiver of any factual, statutory or constitutional
defenses you would have had to this charge.  Do you understand that?

THE DEFENDANT: I understand.

(*Id.,* Tr. 4-5).

The trial judge next ensured through questioning that petitioner understood
he was waiving his right to a jury trial, wherein the State would have the burden of
proving his guilt beyond a reasonable doubt and he would be allowed the
opportunity to both confront the witnesses against him and present evidence in his
defense.  (*Id.,* Tr. 5-6).   In addition, petitioner stated in response to questions
posed by the court that he had discussed "this plea" with his attorney and that he
knowingly entered the plea of guilt.  (*Id.,* Tr. 6-7).

Petitioner further averred that he was "satisfied" with his counsel's
representation, but "wish[ed counsel] could have got me a year."  (*Id.,* Tr. 7).
Petitioner elaborated:

I wish he could have gave me a plea bargain at a year but it didn't
happen in my best interest.  Other than that, I just had to take the two
years.  I took – I agreed to the two years.

(*Id.*).  The following colloquy ensued:

THE COURT:  There was a better deal somewhere, sir?

[PROSECUTOR]:  There was never a better deal, judge.  The original
offer when he was represented by [prior counsel] Dan Reif was two
years.  Our policy is that when they reject that offer, that offer
becomes unavailable.  And if it wasn't for [petitioner's present
counsel,] Mr. Ellsworth[,] he would be serving an offer of three years
because I have a good working relationship with Mr. Ellsworth.  He
got the same offer that he got when [prior prosecuting attorney] Mr.
Cosgrove was in here which was two years.  But for Mr. Ellsworth he
would have received an offer of three years.  I'm not sure what he's
unhappy with.

18

THE COURT:  So, but you're saying that you believe it is in your best interest, though, to proceed today and plead guilty?

THE DEFENDANT:  Right.

THE COURT:  In return.  Okay.

(*Id.,* Tr. 7-8).

In ultimately overruling the assignment of error challenging the trial court's denial of petitioner's pre-sentence motion to withdraw his guilty plea, the Ohio Court of Appeals made factual findings that petitioner "understood that the trafficking charge was being amended to a possession charge, that the second count–a possession charge–would be dismissed, and that he had entered into an agreed sentence of two years."  (Doc. 6, Ex. 23, p. 5).  These findings, which are supported by the record and have not been refuted by clear and convincing evidence, are presumed correct under 28 U.S.C. § 2254(e)(1).[11]

Accordingly, in sum, it appears clear from the record, and as ultimately found by the Ohio Court of Appeals on direct appeal, that when petitioner entered his guilty plea on November 9, 2005 to a possession offense, he was well aware that he was pleading guilty to a felony of the third degree as set forth in what appears to have been a negotiated amendment to Count One of the indictment, as well as of the nature and substance of that charge and the penalty he faced.  Indeed, as noted *supra* p. 16 n.10, petitioner made statements in *pro se* pleadings submitted on direct appeal, which show that he even knew at that time that the negotiated agreed-to sentence of two years was greater than the maximum 18-month sentence he faced on the dismissed possession charge contained in Count Two stemming from the quantity of drugs actually found on him at the time of his arrest. Petitioner, therefore, is unable to prevail on any claim that the amendment to the indictment at the time he entered his plea triggers any constitutional concerns about inadequate notice.

---

[11]  28 U.S.C. § 2254(e)(1) provides that "[i]n a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed correct" unless petitioner rebuts the presumption by "clear and convincing evidence."

By pleading guilty, a defendant waives all non-jurisdictional defects in the proceedings.  *United States v. Pickett,* 941 F.2d 411, 416 (6th Cir. 1991).  "When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea."  *Tollett v. Henderson,* 411 U.S. 258, 267 (1973); *see also McMann v. Richardson,* 397 U.S. 759, 768-69, 771 (1970); *Campbell v. Marshall,* 769 F.2d 314, 318-19 (6th Cir. 1985), *cert. denied,* 475 U.S. 1048 (1986).  Rather, he may only seek to attack the validity of his guilty plea by showing that under the circumstances, his guilty plea was not intelligently or voluntarily entered.  *Tollett,* 411 U.S. at 267; *see also Campbell,* 769 F.2d at 315.

Here, as the Ohio Court of Appeals found on direct appeal, it is clear from the record that petitioner "was given a full Crim.R. 11 colloquy and affirmatively waived his constitutional rights knowingly and intelligently."  (*See* Doc. 6, Ex. 23, p. 5).  Before accepting petitioner's guilty plea, the trial judge ensured that petitioner understood the nature and substance of the charge to which he was pleading and the penalty he faced.  The judge also ensured that petitioner understood the rights he was giving up by entering his guilty plea, which specifically included petitioner's understanding that by pleading guilty, he was making a "complete admission of [his] guilt and a waiver any factual . . . defenses [he] would have had to th[e] charge."  (*See* Doc. 6, Ex. 3, Tr. 5-6).  Finally, the trial judge ensured that the plea was made knowingly and voluntarily in the absence of coercion.  Indeed, when petitioner expressed that he wished he could have obtained a one-year sentence, the judge pursued the matter.  Petitioner's guilty plea was accepted only after the judge  ascertained from the prosecutor that the two-year sentence was the best offer petitioner could expect to receive from the State,  and petitioner indicated that it, therefore, was in his "best interest" to enter the guilty plea.

Accordingly, in sum, the undersigned concludes that petitioner had sufficient notice of the amended charge to which he was pleading and entered his guilty plea knowingly and voluntarily.  Therefore, petitioner is not entitled to habeas corpus relief based on the claim alleged in Ground One challenging the amendment of the indictment at the November 9, 2005 plea hearing or, consequently, the validity of petitioner's guilty plea to the amended count.

## C.  Petitioner Is Not Entitled To Habeas Relief Based On The Ineffective

### Assistance Of Trial Counsel Claim Alleged In Ground Two

In Ground Two of the petition, petitioner essentially alleges his trial counsel was constitutionally ineffective because counsel failed to object to the amendment of the indictment at the plea hearing on November 9, 2005, misled or coerced petitioner into pleading guilty to a third-degree-felony possession charge when in fact petitioner was only guilty of a fourth-degree-felony possession offense, and "sat idly by without objection when [the] prosecuting attorney . . . represented to the court that [petitioner] possessed what exceeded five grams of crack cocaine." (Doc. 1, p. 6).[12]

The Ohio Court of Appeals was the only state court to address this claim, which was presented by petitioner in his *pro se* appellate brief, on the merits.  The court overruled the assignment of error, reasoning in relevant part as follows:

> . . . Spurling argues that his trial counsel was ineffective for failing to object to the amendment of the indictment.  Spurling argues that his trial counsel allowed him to plead guilty to a third-degree felony of possession when he had possessed only a fourth-degree-felony level of crack cocaine–1.35 grams.
>
> In *Strickland v. Washington,* [466 U.S. 668 (1984),] the United States Supreme Court enunciated the two-prong standard for evaluating claims of ineffective assistance of counsel.  The defendant must show that counsel's representation fell below an objective standard of reasonableness, overcoming a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance.  And the defendant must show that counsel's performance prejudiced the defense so as to have deprived the defendant of a fair trial.  To prove prejudice, the "defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different."
>
> While we agree with Spurling that possessing 1.35 grams of crack

---

[12]  Although petitioner alleges a violation of both the federal and Ohio's Constitution in the petition, this Court may only consider petitioner's claim of a federal constitutional violation, not his claim of error under Ohio law.

cocaine is only a fourth-degree felony under R.C. 2925.11(C)(4)(b),
we cannot conclude that his trial counsel was ineffective.  Spurling's
trial counsel negotiated a plea agreement in which the first count of
the indictment, trafficking in crack cocaine, a third-degree felony, was
amended to possession of crack cocaine, a third-degree felony, and the
second count of the indictment, possession of crack cocaine, a fourth-
degree felony, was dismissed.  There was an agreed sentence of two
years' incarceration.  Spurling was afforded a full Crim.R. 11
colloquy and agreed to plead guilty in exchange for the agreed
sentence.

(Doc. 6, Ex. 23, pp. 7-8).

Under the applicable standard of review set forth in 28 U.S.C. § 2254(d),
petitioner generally is not entitled to federal habeas relief unless the state court's
adjudication of his constitutional claims resulted in a decision that (1) is contrary
to, or involves an unreasonable application of, clearly established federal law as
determined by the United States Supreme Court, or (2) is based on an unreasonable
determination of the facts in light of the evidence presented in the state court
proceedings.  *See* 28 U.S.C. § 2254(d); *see also Williams v. Taylor,* 529 U.S. 362,
402-03 (2000) (O'Connor, J., writing for majority on this issue); *Harris v. Stovall,*
212 F.3d 940, 942 (6th Cir. 2000), *cert. denied,* 532 U.S. 947 (2001); *Harpster v.
Ohio,* 128 F.3d 322, 326 (6th Cir. 1997), *cert. denied,* 522 U.S. 1112 (1998).

A state court decision is "contrary to" clearly established federal law as
determined by the Supreme Court under § 2254(d)(1) if the state court arrives at a
conclusion opposite to that reached by the Supreme Court on a question of law or
decides a case differently than the Supreme Court has on a set of materially
indistinguishable facts.  *Williams,* 529 U.S. at 405-06 (O'Connor, J.); *Harris,* 212
F.3d at 942.  An "unreasonable application" of Supreme Court precedent occurs (1)
if the state court identifies the correct legal standard but unreasonably applies it to
the facts of the case, or (2) if the state court either unreasonably extends a legal
principle from Supreme Court precedent to a new context where it should not
apply or unreasonably refuses to extend that principle to a new context where it
should apply.  *Williams,* 529 U.S. at 407-08 (O'Connor, J.).

Under § 2254(d)(1)'s "unreasonable application" clause, a federal habeas
corpus court "may not issue the writ simply because that court concludes in its

independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must also be unreasonable." *Id.* at 411 (O'Connor, J.); *see also Bell v. Cone,* 535 U.S. 685, 694 (2002); *McGhee v. Yukins,* 229 F.3d 506, 510 (6th Cir. 2000); *Harris,* 212 F.3d at 942.

The reasonableness inquiry is an objective one; it does not involve a subjective inquiry into whether or not reasonable jurists would all agree that the state court's application was unreasonable. *Williams,* 529 U.S. at 409-10 (O'Connor, J.); *see also Washington v. Hofbauer,* 228 F.3d 689, 698 (6th Cir. 2000); *Harris,* 212 F.3d at 942-43.  Moreover, the writ may issue only if the application is objectively unreasonable "in light of the holdings, as opposed to the dicta, of the Supreme Court's decisions as of the time of the relevant state court decision." *McGhee,* 229 F.3d at 510, 512 (citing *Williams,* 529 U.S. at 412).

In this case, the Ohio Court of Appeals correctly identified the two-prong standard of review established by the Supreme Court in *Strickland* as governing the resolution of petitioner's ineffective assistance of counsel claim.  As the Ohio Court of Appeals recognized, to demonstrate that counsel's performance was constitutionally ineffective*,* petitioner must show: (1) his counsel made such serious errors that he was not functioning as the counsel guaranteed by the Sixth Amendment; and (2) his counsel's deficient performance prejudiced petitioner. *Strickland v. Washington,* 466 U.S. 668, 687 (1984); *see also Hill v. Lockhart,* 474 U.S. 52, 58-59 (1985) (applying *Strickland* to guilty plea context).  The Court may dispose of an ineffective assistance of counsel claim by finding that petitioner has made an insufficient showing on either ground.  *See Strickland,* 466 U.S. at 697.

In a case such as this involving a conviction obtained upon entry of a guilty plea, the second, "prejudice" prong of the *Strickland* test "focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process."  *See Hill,* 474 U.S. at 59.  This means that in order to demonstrate prejudice in the guilty plea context, petitioner must show a reasonable probability exists that, but for counsel's alleged errors, he would not have pleaded guilty and would have insisted on going to trial.  *See id.*

As discussed earlier, it appears that the indictment was amended as part of the parties' negotiated plea agreement, which permitted petitioner to plead to a possession as opposed to a trafficking offense and to receive an agreed prison

sentence of two years.  Petitioner has not demonstrated that his counsel's performance in negotiating this plea fell outside the wide range of reasonable professional assistance under the circumstances of this case.

Counsel was able to obtain a plea bargain that not only eliminated the trafficking charge, but also substantially reduced the amount of prison time that petitioner could have received (i.e., six and one-half years) if he had proceeded to trial and were convicted on the two charges contained in the original indictment. (*See* Doc. 6, Ex. 23, p. 7).  In addition, as the prosecutor indicated at the November 9, 2005 plea hearing, the State's stipulation to a two-year sentence was the best offer the prosecution was willing to extend to petitioner, and in fact, was much better than the three-year prison term that would have been offered if not for the prosecutor's "good working relationship" with petitioner's counsel.  In light of the prosecutor's unwillingness to agree to less than a two-year sentence, the amendment of the indictment to allow for a guilty plea to the more serious, third-degree-felony possession offense, for which a two-year sentence could be imposed, constituted a reasonable trial strategy.

In any event, even assuming counsel acted unreasonably in this case, petitioner has not shown a reasonable probability exists that he would not have entered the plea agreement in the absence of such error.  As discussed earlier, petitioner was well aware when he entered his guilty plea of the nature and substance of the possession charge to which he was pleading and the penalty he faced.  He also was aware that this charge was more serious and carried a more severe penalty than the fourth-degree-felony possession charge contained in Count Two of the indictment that was to be dismissed under the terms of the plea agreement.  Finally, petitioner was aware before he entered his plea that the two-year sentence jointly agreed to by the State and defense was greater than the maximum 18-month sentence he faced on the dismissed possession charge contained in Count Two stemming from the quantity of drugs actually found on him at the time of his arrest.  Despite this knowledge, petitioner still chose to go forward with his guilty plea and, in return, obtained the benefit of the bargain of not having to plead guilty to a trafficking offense and of a two-year prison term "instead of the possible six and a half years that could have resulted from a conviction on the two original charges."  (*See* Doc. 6, Ex. 23, p. 7).

Accordingly, in sum, petitioner is unable to demonstrate that the state courts' adjudication of his ineffective assistance of counsel claim is contrary to or involves

an unreasonable application of *Strickland/Hill*, or is based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Therefore, the undersigned concludes that petitioner is not entitled to habeas relief based on the allegations of ineffectiveness by trial counsel that are set forth in Ground Two of the petition.

## IT IS THEREFORE RECOMMENDED THAT:

1. Petitioner's motion for summary judgment (Doc. 8) be **DENIED**, and petitioner's petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 (Doc. 1) be **DENIED** with prejudice.

2. A certificate of appealability should not issue with respect to the claims alleged in Grounds Three through Seven of the petition, which this Court has concluded are barred from review on procedural waiver grounds, because under the first prong of the applicable two-part standard enunciated in *Slack v. McDaniel,* 529 U.S. 473, 484-85 (2000), "jurists of reason" would not find it debatable whether the Court is correct in its procedural rulings.[13]

A certificate of appealability also should not issue with respect to the claims alleged in Grounds One and Two of the petition, which were addressed on the merits herein,[14] because petitioner has not made a substantial showing that he has

---

[13] Because the first prong of the *Slack* test has not been met, the Court need not address the second prong of *Slack* as to whether "jurists of reason" would find it debatable whether petitioner has stated a viable constitutional claim in any of these "waived" claims for relief. *See Slack,* 529 U.S. at 484. However, it is noted that the undersigned has concluded that "the claims alleged in Grounds Three through Six of the petition had little likelihood of success [on direct appeal] in light of petitioner's knowing and intelligent guilty plea to the amended third-degree-felony possession charge with an agreed-to two (2) year sentence." *See supra* p. 13. In addition, because petitioner entered a plea agreement involving a stipulated sentence that was in fact imposed, it is doubtful "jurists of reason" would find it debatable whether he has stated a viable constitutional claim in Ground Seven–i.e., that the sentence is void because it "was supported by felony sentencing findings under Ohio's unconstitutional sentencing scheme." (*See* Doc. 1, p. 9).

[14] Because the adjudication of these claims does not involve a procedural ruling, the two-part test enunciated in *Slack,* 529 U.S. at 484-85, for determining whether or not to issue a certificate of appealability for procedurally-defaulted claims, is inapplicable.

stated "viable claim[s] of the denial of a constitutional right" or that the issues presented are "adequate to deserve encouragement to proceed further."  *See Slack,* 529 U.S. at 475 (citing *Barefoot v. Estelle,* 463 U.S. 880, 893 & n.4 (1983)); *see also* 28 U.S.C. § 2253(c); Fed. R. App. P. 22(b).

 3.  With respect to any application by petitioner to proceed on appeal *in forma pauperis,* the Court should certify pursuant to 28 U.S.C. § 1915(a)(3) that an appeal of any Order adopting this Report and Recommendation would not be taken in "good faith," and, therefore, **DENY** petitioner leave to appeal *in forma pauperis* upon a showing of financial necessity.  *See* Fed. R. App. P. 24(a); *Kincade v. Sparkman,* 117 F.3d 949, 952 (6th Cir. 1997).

Date: 3/18/08                              **/s/Timothy S. Black**
            cbc                            Timothy S. Black
                                           United States Magistrate Judge

K:\BRYANCC\2008 habeas orders\07-748denypet.gp-amendindict-agreedsent-iac.wpd

26

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

LeDon Spurling,
     Petitioner


       vs                       Case No. 1:07cv748
                             (Beckwith, C.J.; Black, M.J.)


Ohio Adult Parole Authority,
     Respondent

# NOTICE

Attached hereto is a Report and Recommendation issued by the Honorable Timothy S. Black, United States Magistrate Judge, in the above-entitled habeas corpus action brought under 28 U.S.C. § 2254. Any party may object to the Magistrate Judge's Report and Recommendation within **fifteen (15) days** after the date the Report and Recommendation is stamped as "filed" by the Clerk of Court. Such party shall file with the Clerk of Court and serve on all other parties written objections to the Report and Recommendation, specifically identifying the portion(s) of the proposed findings, recommendations, or report objected to, together with a memorandum of law setting forth the basis for such objection(s). Any response by an opposing party to the written objections shall be filed within ten (10) days after the opposing party has been served with the objections. A party's failure to make objections in accordance with the procedure outlined above may result in a forfeiture of his rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).